# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICHARD ALLEN HATLEY, SR.,

        Defendant-Appellant.

UNPUBLISHED
February 10, 2015

No. 318935
Wayne Circuit Court
LC No. 13-005698-FH

---

Before: FORT HOOD, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of unarmed robbery, MCL 750.530, and second-degree retail fraud, MCL 750.356d. Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 8 to 20 years in prison for the robbery conviction and 30 days in jail for the retail-fraud conviction. We affirm.

Defendant first argues that the prosecution failed to provide him with timely notice under MCL 769.13(1) of its intent to seek a fourth habitual offender sentence enhancement. We disagree.

Whether the prosecution provided timely notice under MCL 769.13(1) is reviewed de novo. See *People v Hornsby*, 251 Mich App 462, 469; 650 NW2d 700 (2002). In addition, we review for clear error a trial court's findings of fact following an evidentiary hearing. *People v Buie*, 491 Mich 294, 304; 817 NW2d 33 (2012).

MCL 769.13(1) provides:

> In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

MCL 769.13(2) clarifies that the prosecution must list the defendant's prior convictions. In addition, MCL 769.13(2) provides that the prosecution must serve the notice on the defendant and must file the notice in the trial court. The notice "may be personally served upon the

-1-

defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings." MCL 769.13(2). In addition, the prosecution must file a written proof of service in the trial court. MCL 769.13(2).

This Court has held that MCL 769.13 establishes " 'a bright-line test.' " *People v Morales*, 240 Mich App 571, 575; 618 NW2d 10 (2000) (citation omitted). However, this Court has also found that the prosecution's failure to file proof of service with the trial court may constitute harmless error if the defendant received notice of the prosecution's intent to enhance his or her sentence and the defendant had the ability to respond. See *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999).

Defendant had notice of the prosecution's intent to seek a fourth habitual offender sentence enhancement. The felony complaint, felony warrant, and felony information all provided defendant with notice. On June 11, 2013, a warrant containing a fourth habitual offender notice was filed in the district court. On the same day, a felony complaint containing the fourth habitual offender notice was filed in the district court. On June 7, 2013, the prosecution signed a felony information, which also contained the habitual offender notice. On July 1, 2013, defendant was arraigned on the information in the trial court. Defendant waived the formal reading of the information. On July 8, 2013, the trial court held a docket conference, at which defendant stated that he was rejecting the prosecution's plea offer. Former defense counsel stated that he notified defendant of the offer, which was "an offer of one-and-a-half to 15 years; that's with a dismissal of the Habitual." On July 12, 2013, the prosecution signed an amended felony information, which contained a fourth habitual offender notice. The amended felony information appears in the lower court file.

At the evidentiary hearing on defendant's motions for a new trial and to correct an invalid sentence, former defense counsel testified that the prosecution did not provide him with a habitual offender notice. However, counsel acknowledged that he had read the prosecutor's file at the preliminary examination, which contained a fourth habitual offender notice, and informed defendant of the contents of the file. Former defense counsel also informed defendant of the charges, including the fact that defendant was charged as a fourth habitual offender, before the arraignment on the information. Therefore, defendant had notice of the prosecution's intent to seek a habitual offender sentence enhancement. See MCL 769.13(1).

Additionally, during defendant's sentencing, the trial court noted that the presentence investigation report (PSIR) did not account for the fact that defendant was a fourth habitual offender. The following discussion took place between the trial court and defense counsel:

> *The Court*: That was the section—I think it's despicable that he has used his children as cover in the uh I think—what is it 12 now, felonies that he's committed. Also, they do not have it scored as a habitual fourth which would change the guideline range from 29 to 114 rather than from 29 to 57.
>
> [*Defense Counsel*]: Your [sic] correct with that, Judge.

The trial court sentenced defendant to a minimum of eight years, or 96 months, in prison; this was well above the minimum sentence guidelines range without the habitual offender sentence enhancement. Neither defendant nor defense counsel challenged the sentence or noted that defendant had not been provided with notice of the prosecution's intent to seek a habitual offender sentence enhancement. In sum, defendant had notice of the prosecution's intent to seek a fourth habitual offender sentence enhancement and did not object. See MCL 769.13(1).

In addition, the prosecution's failure to file a proof of service with the trial court constituted harmless error. As discussed above, defendant had notice of the prosecution's intent to seek a fourth habitual offender sentence enhancement. Furthermore, there is no other indication that the prosecution's failure to file a proof of service in the trial court interfered with defendant's ability to respond to the habitual offender notice. See *Walker*, 234 Mich App at 314-315. Thus, the prosecution's failure to file a proof of service with the trial court constituted harmless error. See *id*.

Defendant next argues that defense counsel was ineffective for failing to inform him of the potential consequences of rejecting the prosecution's plea offer. Defendant also argues that defense counsel was ineffective for telling him that a videotape recording from the CVS Pharmacy where the incident occurred did not show anything. We disagree.

" 'We review for an abuse of discretion a trial court's decision to grant or deny a new trial. An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes.' " *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012) (citation omitted). An ineffective assistance of counsel claim involves issues of law and fact. *Id*. This Court reviews for clear error a trial court's findings of fact at a *Ginther*[1] hearing, and reviews de novo questions of law. *Russell*, 297 Mich App at 715.

A defendant has the right to the effective assistance of counsel under the United States and Michigan Constitutions. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing US Const, Am VI; Const 1963, art 1, § 20. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Defense counsel is not ineffective for failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defense counsel must inform the defendant of any formal plea offer. *Missouri v Frye*, 566 US ___; 132 S Ct 1399, 1408; 182 L Ed 2d 379 (2012). To show that defense counsel's failure to inform the defendant of a formal plea offer prejudiced the defendant, a defendant must establish that " 'the outcome of the plea process would have been different with competent advice.' " *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (citation omitted). Specifically,

"a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." [*Id.* (citation omitted).]

The trial court held a hearing on defendant's motion for a new trial. Defendant testified at the hearing that the fact that he was a fourth habitual offender was mentioned around the time of the preliminary examination in the district court, but was not discussed after that time. Neither former defense counsel nor current defense counsel informed defendant that a habitual offender notice had been filed. Former defense counsel advised defendant that the minimum sentence guidelines range was 29 to 57 months and that he should accept the prosecution's plea offer. Former defense counsel told defendant that "probably five years is what [he] was going to get." Defendant asked defense counsel before sentencing what he thought the maximum sentence would be. Defense counsel said he would talk to the judge, but never returned to talk with defendant. Defendant testified that he believed he would have accepted the plea offer had he known about the fourth habitual offender sentence enhancement. He explained that he had studied the issue and knew that a habitual offender enhancement would have raised the minimum sentencing guidelines range. Defendant also acknowledged that the warrant request stated, "Hab-fourth." Defendant did not accept the plea offer because he was afraid that the parole board would "flop" him with regard to an earlier conviction because he had been released from confinement only 77 days before the incident at issue in the present case. Defendant denied committing unarmed robbery, but admitted that he committed retail fraud.

According to defendant, former defense counsel told him that the detective working on the case said that the video recording did not depict the incident. Defendant claimed that he would not have gone to trial if he had known what the video recording depicted. However, defendant also acknowledged that the video recording did not show him stealing anything.

Defense counsel testified that he was not aware of when he received notice of the prosecution's intent to seek a fourth habitual offender sentence enhancement. Defense counsel advised defendant of the minimum sentencing guidelines range and of the plea offer. However, defense counsel testified that he never informed defendant that he would only serve five years in prison. Defense counsel recalled that the minimum sentencing guidelines range began at 29 months' imprisonment. Defense counsel did not see anything that could be characterized as unarmed robbery on the video recording. However, he stated that he did not tell defendant that there was nothing on the video recording. He could not recall exactly what he told defendant regarding the video.

Former defense counsel testified that the prosecution did not provide him with a habitual offender notice. However, he acknowledged that he read the prosecutor's file, which contained a fourth habitual offender notice, and informed defendant of the contents of the file. He also informed defendant of the charges, including the fact that defendant was charged as a fourth habitual offender, before the arraignment on the information. He testified that he informed defendant of the prosecution's plea offer. He also told defendant that the minimum sentencing guidelines range began at 27 months' imprisonment and that defendant could face life in prison if he did not accept the plea offer. Former defense counsel insisted that he did not inform

defendant that the most time he could spend in prison would be five years. Former defense counsel told defendant that the manager of the CVS Pharmacy told him that the video recording did not show the incident. Defendant did not believe him.

The trial court noted during the evidentiary hearing that the complaint and warrant both contained a "habitual-fourth" notice. The trial court also pointed out that there was a felony information from the district court in the lower court record, which was not time-stamped. The trial court noted that the district judge had stated on the record at the preliminary examination that defendant was "charged with habitual offender-fourth offense notice." In addition, defendant's former attorney noted that he advised defendant that he was being charged as a fourth habitual offender. The court stated that even defendant admitted that the habitual offender issue was discussed at the preliminary hearing. Thus, the court concluded that defendant was aware of the fourth habitual offender notice. The trial court found that there was no evidence that either attorney advised defendant that he would be sentenced to five years in prison. The court also found that neither attorney had advised defendant that the video recording showed nothing. The court explained that it was not clear that defendant would have accepted the plea offer. Thus, the trial court denied defendant's motion.

The trial court did not abuse its discretion by denying defendant's motion for a new trial. Defense counsel testified at the hearing that he told defendant about the minimum sentencing guidelines range and the plea offer. Former defense counsel testified that he told defendant of the charges against him, including the fact that defendant was charged as a fourth habitual offender, before the arraignment on the information. He also informed defendant of the plea offer. Furthermore, defense counsel and former defense counsel both denied telling defendant that he could only spend a maximum of five years in prison. Thus, according to the testimony of defense counsel and former defense counsel, defendant was informed of the plea offer, the potential minimum sentence, and the prosecution's intent to seek a sentence enhancement. Defendant was properly informed of the plea offer, *Frye*, 566 US at ___; 132 S Ct at 1408, and we perceive no clear error in the trial court's findings, *Russell*, 297 Mich App at 715.

In addition, defendant fails to show prejudice. We note that it is unclear whether the trial court would have approved the terms of the plea offer. At any rate, however, defendant has not established that he would have accepted the offer. During the hearing, defendant testified that he would have accepted the plea offer had he known about the fourth habitual offender sentence enhancement notice. However, defendant also testified that his reason for not accepting the plea offer was that he was afraid that the parole board would "flop" him with regard to an earlier conviction because he had been released from confinement only 77 days before the incident in question. Thus, defendant's reason for rejecting the plea offer did not involve the fourth habitual offender sentence enhancement. In addition, defendant continued to maintain his innocence with regard to the unarmed robbery conviction during the hearing, which indicates that he would not have accepted the plea offer. Therefore, defendant fails to show prejudice. See *Douglas*, 496 Mich at 592.

Additionally, defendant's argument that defense counsel and former defense counsel were ineffective for telling him that the prosecution's video evidence did not show anything fails. Defense counsel testified at the hearing that he did not see anything that could be characterized as unarmed robbery on the video recording from the CVS Pharmacy, but he did not

tell defendant that there was nothing on the video. In addition, Larinda Douglas, the shift supervisor of the CVS Pharmacy during the time of the incident, testified regarding the contents of the video recording. The video recording did not depict defendant removing any items from the shelves and putting them into his pants. Defendant also acknowledged that the video recording did not show him stealing anything. Therefore, defense counsel's performance was not deficient because he was correct that the video recording did not depict unarmed robbery, and he did not tell defendant that the video showed nothing. See *Trakhtenberg*, 493 Mich at 51; see also *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010) (describing the elements of unarmed robbery).

Furthermore, defendant fails to show how former defense counsel's statement regarding the video recording was incorrect. First, former defense counsel conveyed to defendant that the manager of the CVS Pharmacy told him that the incident took place outside of the area encompassed by the video recording. Former defense counsel did not come to an independent conclusion on the issue, but rather informed defendant of what he had heard during the preliminary examination. Second, according to defense counsel, the video recording did not depict unarmed robbery. According to Douglas, the video recording did not show defendant taking items off the shelves and putting them into his pants. Defendant himself acknowledged that the video recording did not show him stealing anything. Therefore, former defense counsel's conduct did not fall below an objective standard of reasonableness. See *Trakhtenberg*, 493 Mich at 51. Finally, former defense counsel testified at the hearing that defendant did not believe that the video did not show anything. Therefore, there is no reasonable probability that, but for defense counsel's and former defense counsel's statements regarding the video, the result of the trial would have been different since defendant did not rely on the statements to his detriment. See *id*.

Additionally, defense counsel and former defense counsel were not ineffective for failing to object to the prosecution's habitual offender notice. As noted above, the prosecution provided defendant with notice of its intent to seek a fourth habitual offender sentence enhancement. Therefore, defense counsel and former defense counsel did not render ineffective assistance because an objection would have been futile. See *Ericksen*, 288 Mich App at 201. For the reasons stated above, defendant's ineffective assistance of counsel claim fails.

Finally, defendant argues that his convictions for unarmed robbery and second-degree retail fraud violate double jeopardy. We disagree.

A defendant preserves the issue of double jeopardy by raising an objection to his or her convictions as a violation against double jeopardy in the trial court. See *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005). Defendant failed to object to his convictions as a violation of double jeopardy in the trial court. Therefore, the issue is unpreserved. See *id*. We review an unpreserved claim of double jeopardy for plain error affecting the defendant's substantial rights. *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).

The Double Jeopardy Clause of the United States Constitution protects a defendant against " '(1) multiple prosecutions for the same offense after acquittal or conviction; and (2) multiple punishments for the same offense.' " *People v Duenaz*, 306 Mich App 85, 105; 854 NW2d 531 (2014) (citation and emphasis omitted); see also US Const, Am V; Const 1963, art 1,

§ 15.  Unless the Legislature has expressed its intent for multiple punishments, this Court applies the "same elements" test from *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), to determine whether a defendant's convictions violate double jeopardy.  *Duenaz*, 306 Mich App at 106.  "The *Blockburger* test looks at the statutory elements of the offenses and asks whether each offense requires proof of a fact that the other does not."  *Id*.

In order to be convicted of unarmed robbery, "a defendant must (1) feloniously take the property of another, (2) by force or violence or assault or putting in fear, and (3) be unarmed."  *Harverson*, 291 Mich App at 177.  To convict defendant of second-degree retail fraud, the prosecution was required to prove:

> While a store is open to the public, [a person] alters, transfers, removes and replaces, conceals, or otherwise misrepresents the price at which property is offered for sale, with the intent not to pay for the property or to pay less than the price at which the property is offered for sale, if the resulting difference in price is less than $200.00.  [MCL 750.356d(4)(a).]

Defendant's convictions do not violate the constitutional protection against double jeopardy because each offense required proof of a fact that the other did not.  For unarmed robbery, the prosecution was required to prove that defendant committed the taking by force, violence, assault, or putting in fear.  *Harverson*, 291 Mich App at 177.  This element was not required to convict defendant of second-degree retail fraud.  See MCL 750.356d(4)(a).  In addition, the crime of second-degree retail fraud requires proof that the defendant took property from a store open to the public, or the immediate area surrounding the store.  *Id*.  The prosecution was not required to prove this element for unarmed robbery.  See *Harverson*, 291 Mich App at 177.  Thus, each offense required proof of a fact that the other did not.  See *Duenaz*, 306 Mich App at 106.  We acknowledge that there is a similarity between the proofs offered for each offense in this case.  However, this Court has clarified that substantial overlap between the prosecution's proofs in establishing the crimes is not enough to give rise to a double-jeopardy violation.  See *McGee*, 280 Mich App at 685.  Defendant's convictions do not violate the constitutional prohibition against double jeopardy.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Michael F. Gadola