*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CURTIS ALLEN MORRIS,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2023

No. 364906
Branch Circuit Court
LC No. 2021-113288-FH

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the sentence imposed after he pleaded guilty to knowingly or intentionally possessing methamphetamine, MCL 333.7403(2)(b)(*i*). The trial court sentenced defendant to serve 38 months to 12 years in prison. We affirm.

## I. FACTUAL BACKGROUND

This case arose from an incident when a small bag containing 0.33 grams of methamphetamines fell from defendant's pocket onto the floor of the Branch County Jail's booking area. Defendant had just been arrested for absconding from parole and was out on bond for two additional offenses. The trial court subsequently sentenced defendant as previously noted, and defendant objected to the court's scoring of OV 19 in both this case and a companion case involving resisting and obstructing a police officer. Defendant argued that the court had wrongly concluded that he was in the jail when the drugs fell out of his pocket. He also argued that the trial court could not have assessed 25 points under OV 19 using conduct that formed the basis of a crime that the prosecutor dropped as part of a plea deal. Lastly, he claimed that the court's OV 19 score was incorrect, given that he informed the officers when the methamphetamines fell out of his pocket.

---

[1] *People v Morris*, unpublished order of the Court of Appeals, entered March 20, 2023 (Docket No. 364906).

The trial court disagreed, finding that defendant's actions constituted a serious danger to a penal institution. At sentencing, the court heard the statement of a probation agent who asserted that the assessment of the 25 points rested on the fact that defendant was on bond at the time for two prior offenses. Although the underlying charge had been dropped per the plea agreement, defendant's conduct nevertheless constituted conduct that occurred after the sentencing offense. Moreover, the court considered the inherently dangerous nature posed by the methamphetamines. Therefore, the court found that OV 19 was properly scored. This appeal followed.

## II. ANALYSIS

Defendant's only claim of error on appeal is that the trial court improperly assigned 25 points under OV 19, thus extending his maximum sentence. Defendant bases his appeal on the claim that his conduct did not threaten the security of the jail as he was not actually in the jail when the offense occurred. Defendant also argues that the trial court wrongly considered postoffense conduct when assigning 25 points for OV 19, pointing out that he warned the officers of the drugs' presence when they fell out of his pocket. We disagree.

This Court reviews de novo whether the trial court properly interpreted and applied the relevant law to the facts. *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). This Court reviews for clear error the trial court's factual findings in support of a particular score under an offense variable. See *People v Dickinson*, 321 Mich App 1, 20-21; 909 NW2d 24 (2017). A finding is clearly erroneous when this Court is left with the definite and firm conviction that a trial court made a mistake. *Id*. at 21.

Michigan law states that "a person shall not sell, give, or furnish, either directly or indirectly, any alcoholic liquor, prescription drug, poison, or controlled substance to a prisoner who is in or on a correctional facility . . . ." MCL 800.281(1). The law further forbids any disposing "of that liquor, drug, poison, or controlled substance in any manner that allows a prisoner or employee of the correctional facility who is in or on a correctional facility access to it." MCL 800.281(1). Additionally, this Court has unequivocally acknowledged that any "smuggling of controlled substances into a jail" poses "a threat to the security of a penal institution" given the "dangers of controlled substances to the users and those around them." *People v Carpenter*, 322 Mich App 523, 531; 912 NW2d 579 (2018). Additionally, the Michigan Supreme Court has stated that "[a] 25-point score under OV 19 requires the trial court to find by a preponderance of the evidence that the defendant by his or her conduct threatened the security of a penal institution or court." *People v Dixon*, 509 Mich 170, 177; 983 NW2d 385 (2022) (quotation marks and citation omitted); see also MCL 777.49(a). Satisfying this standard requires the trial court to find "(1) that the defendant engaged in some conduct and (2) that conduct threatened the security of the prison." *Dixon*, 509 Mich at 177.

Defendant contends that his conduct, which occurred in the booking area of the jail, could not have threatened the jail's security as the booking area technically lies outside the jail's facilities. However, MCL 801.251(4) broadly defines a "jail" as a facility "operated by a county for the detention of persons charged with . . . criminal offenses . . . ." Michigan's Health and Safety Fund Act, MCL 141.471 *et seq*., similarly defines a "[j]ail facility," as "a jail, holding cell, holding center, or lockup as those terms are defined in [MCL 791.262]." MCL 141.472. MCL 791.262(a) defines "[h]olding cell" as a "cell or room in a facility of a local unit of

government that is used for the detention of . . . persons awaiting processing, booking, [or] court appearances . . . ." Additionally, Subdivision (b) defines "[h]olding center" as a "facility . . . operated by a local unit of government for the detention of persons awaiting processing, booking, [or] court appearances . . . ." Taken together, these provisions of Michigan law establish that the booking phase of detention remains a significant part of the overall detention process. As the facilities used for booking constitute an important component of the detention facility, defendant was legally in the jail when the methamphetamines fell out of his pocket. Thus, defendant's argument on this point lacks merit.

Defendant's argument that OV 19 does not contemplate postoffense conduct is equally unavailing. Contrary to his claim, this Court has recognized that OV 19 "explicitly contemplates postoffense conduct." *Carpenter*, 322 Mich App at 530. Additionally, the sentencing offense need not involve a threat to a penal institution's security. *Id*. When a defendant is in custody at the time a "controlled-substance" offense occurs in a penal institution, that defendant is in the "administration of justice phase of the sentencing." *Id*. (quotation marks omitted). Thus, defendant was in the "administration of justice" phase when the methamphetamines fell from his pocket. See *id*. Additionally, when the offense took place, defendant was being placed in jail for a separate, underlying offense, namely parole absconding. That the underlying charge did not involve a threat to the jail and that it was eventually dropped per a plea bargain is irrelevant. Because the assignment of OV 19 points contemplates postoffense conduct, the trial court acted properly in assessing defendant's conduct while in police custody.

Finally, defendant's contention that his conduct did not constitute a threat to the jail's security also lacks merit, notwithstanding defendant's warning to officers about the drugs. The Michigan Supreme Court has recognized that "possession alone" of controlled substances, "even constructive possession," could threaten the security of a penal institution. *Dixon*, 509 Mich at 179. Defendant's possession of methamphetamines while in the jail posed a risk to the jail's security. Because defendant was in an area considered part of the jail, he possessed the drugs while in the jail and its facilities. Given the danger posed by the drugs and defendant's possession of them while in the jail, we may, but need not, inquire into defendant's handling of the substances to justify the trial court's assignment of 25 points under OV 19. See *id*. at 180-182. Regardless, defendant's conduct suggests, though does not confirm, the possibility of drug smuggling.

As for defendant warning the officers of the drugs' presence, this claim remains somewhat suspect as this assertion admittedly originated from defendant, not the officers. Also, it remains unclear whether defendant's decision to inform the officers was based on a desire to follow the law or to simply lessen the consequences of being discovered with drugs after his arrest. More importantly, this act fails to nullify the fact that defendant brought the drugs into the jail's booking area, thus within the reach of its facilities, inmates, and employees. The law clearly forbids the disposing of a controlled substance "in any manner" that enables a "prisoner or employee" of a jail to access it. MCL 800.281(1). By bringing the drugs within reach of the officers and having the drugs in his possession while in the jail, defendant posed a security risk to the jail that could have been very serious if he had managed to get past the booking area without their presence being detected. On this record, defendant has not shown that the trial court plainly erred when it assessed 25 points under OV 19. See *Dickinson*, 321 Mich App at 21.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood